IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MICHAEL GURGONE,

    Plaintiff/Counter-Defendant,

v.

GLOBAL SIGNAL ACQUISITIONS IV LLC,

    Defendant/Counter-Plaintiff.

No. 2016-cv-10549

Judge Sara L. Ellis

## AMENDED COUNTERCLAIM

Defendant/Counter-Plaintiff, GLOBAL SIGNAL ACQUISITIONS IV LLC, ("GSA IV") by and through its undersigned counsel, complains and alleges against Plaintiff/Counter-Defendant MICHAEL GURGONE ("Gurgone"), as follows:

### The Nature of the Case

1. GSA IV brings this action for breach of contract, injunctive relief and declaratory relief in order to confirm its right of access under a lease and easement agreement and to redress a scrivener's error contained in a legal description of an access and utility easement included in multiple agreements between the parties.

### Parties

2. Defendant/Counter-Plaintiff GSA IV is a citizen of Delaware and Texas. GSA IV is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas. GSA IV's sole member is Global Signal Operating Partnership L.P., a Delaware limited partnership with its headquarters in Texas. Global Signal Operating Partnership L.P.'s partners are CCGS Holdings Corp., a Delaware corporation with its headquarters in Texas, and Global Signal GP LLC. Global Signal GP LLC is a Delaware limited liability company, with its sole member being CCGS Holdings Corp., a Delaware corporation with its headquarters in Texas.

3.      Gurgone is an individual domiciled in New Lenox, Will County, Illinois, and therefore is a citizen of Illinois.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Gurgone because Gurgone filed the Second Amended Counterclaim in this case.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Gurgone resides in this district.

## Factual Background

7.      On or about May 14, 1998, Gurgone[1] and SprintCom, Inc. ("SprintCom") entered into a PCS Site Agreement which provided, in part, that Gurgone leased to SprintCom a certain site (the "Site") located at 1121 Bjork Drive, County of Will, Illinois, for the purpose of erecting, operating and maintaining a communications tower (the "Tower").  A true and correct copy of the PCS Site Agreement (with the rental amount redacted) is attached as Exhibit 1.

8.      The PCS Site Agreement, referenced above, also grants SprintCom "a non-exclusive easement for reasonable access thereto and to the appropriate, in the discretion of SprintCom, source of electric and telephone facilities."  (Ex. 1, Para. 1).

9.      The PCS Site Agreement further states "SprintCom will have access to the Site 24 hours per day, 7 days per week basis."  (Ex. 1, Para 1).

10.     The PCS Site Agreement was for an initial term of five (5) years with four (4) additional renewal terms of five (5) years each.  (Ex. 1, Para. 2).

---

[1] The agreements at issue were also executed by Michael Gurgone's wife Sherri Gurgone, who is deceased and thus is not made a party to this action.

11. SprintCom and Gurgone executed a Memorandum of the PCS Site Agreement, evidencing the existence of the PCS Site Agreement. A true and correct copy of the Memorandum of the PCS Site Agreement is attached as Exhibit 2.

12. Both the PCS Site Agreement and the Memorandum of the PCS Agreement contain hand drawn sketches of the Site and a true and correct legal description of the parent parcel. They also include the same sketch of an access road to the Site via an existing public road.

13. The PCS Site Agreement sets forth that "the prevailing party in any action or proceeding in court or mutually agreed upon arbitration proceeding to enforce the terms of this Agreement is entitled to receive its reasonable attorneys' fees and other reasonable enforcement costs and expenses from the non-prevailing party." (Ex. 1, Para. 19).

14. Since the Tower's construction in 1998, the access road from the public road at the Site has remained the same. The same driveway provides both access to the Gurgone residence and the Tower, near where Gurgone's property borders the Interstate 80 highway.

15. On or about June 2, 2006, Gurgone and GSA IV entered into an Assignment and Assumption of Lease Agreement which conveys, transfers, and assigns to GSA IV the PCS Site Agreement referenced above. A true and correct copy of the Assignment and Assumption of Lease Agreement is attached as Exhibit 3.

16. On or about June 2, 2006, Gurgone executed an Easement in favor of GSA IV regarding the Site and access thereto. A true and correct copy of the Easement is attached as Exhibit 4.

17. A legal description of the Access and Utility easement appears as Exhibit B to the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4.)

18. There is a call missing from the legal description in the access portion of the Access and Utility easement in the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4.).

19. The utility easement portion of the Access and Utility easement in the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4) is missing altogether.

20. The Easement and the Assignment and Assumption of Lease Agreement were executed at the same time as part of a transaction pursuant to an Easement Purchase Agreement wherein GSA IV was to pay and did pay Gurgone $132,850.00 (the "Easement Purchase").

21. The Easement contains a Paragraph 3 entitled "Use" which reiterates the 24 hours a day, seven days per week access and the broad rights GSA IV has to maintain and improve the Tower:

> The Tower Area shall be used for the purpose of erecting, installing, operating and maintaining radio and communications towers, equipment buildings, and equipment shelters, including leasing, subleasing, and licensing space thereon to third parties. Grantee may make any improvement, alteration or modifications to the Tower Area as are deemed appropriate by Grantee, in its discretion for the purposes set forth herein. At all times during the Term of the Easement, Grantee and its customers, tenants, lessees, sublessees, and licensees shall have the right to use, and ***shall have free access to, the Tower Area and Access and (Guy and/or Utility) Areas seven (7) days a week, twenty-four (24) hours a day.*** Grantee shall have the exclusive right to lease, sublease, license, or sublicense any radio/communications tower or any other structure or equipment on the Tower Area, and shall also have the exclusive right to lease or sublease to third parties any portion of the Tower Area, itself, but no such lease, sublease or license shall relieve or release Grantee from its obligations under this Easement. Grantee and its customers shall have the right to erect, install, maintain, and operate on the Tower Area such equipment, structures, fixtures, signs, and personal property as described in Paragraph 2, and such property, including the equipment, structures, fixtures, signs, and personal property currently on the Tower Area, shall not be deemed to be part of the Tower Area, but shall remain the property of Grantee or its customers, as applicable. At any time, Grantee or its customers shall have the right to remove their equipment, structures, fixtures, signs, and personal property from the Tower Area.

(Ex. 4, Para. 3)(emphasis added).

22. Paragraph 18 of the Easement contains a provision called "Other Utility Easement" which grants GSA IV broad power to use Gurgone's property for its utility connections, including underground burying of connections irrespective of whether the easement rights previously existed. It reads as follows:

> Other Utility Easement. ***To the extent that any public utility benefits the Tower Area and Access and Utility Area without valid easement, Grantor also grants and conveys unto Grantee, its tenants, licensees, successors, assigns, assignees, and sublessees, full, complete, uninterrupted and unconditional access to and from the Grantor Property, seven days a week, 24 hours a day, over and across the common areas of any other adjacent property now or hereafter owned by Grantor,*** for, without limitation, ingress and egress to and from the Grantor Property, as well as the installation, location, and maintenance of overhead and/or underground utility connections, including electric, telephone, gas, water, sewer, and any other utility connection. Grantee's use of such utility easements shall not interfere with Grantor's normal use and enjoyment of the Grantor Property. The rights conferred pursuant to this paragraph may be partially assigned by Grantee to any private or public utility authority to provide utilities .to the Grantor Property, or to otherwise further effect this provision.

(Ex. 4, Para. 18)(emphasis added).

23. Gurgone has alleged that the Access and Utility easements within the Assignment and Assumption of Lease Agreement and the Easement are inoperative by nature of the scrivener's errors contained in the legal description.

24. The Easement, like the PCS Site Agreement, also provides for fee shifting to the prevailing party. (Ex. 4, Para. 13).

25. Gurgone has also alleged that the PCS Site Agreement is no longer in effect and creates no enforceable rights for GSA IV.

26. The PCS Site Agreement, the Memorandum of the PCS Site Agreement, the Assignment and Assumption of Lease Agreement, and the Easement are valid and enforceable agreements.

5

27. Since 1998, SprintCom, GSA IV, and their predecessors, agents and/or affiliated entities have accessed the Site via an existing driveway that provides vehicular access to both the Site and Gurgone's residence.

28. Since 1998, SprintCom, GSA IV, and their predecessors, agents and/or affiliated entities have used the same general underground pathway from the public utility access points near the Site to the Tower.

29. It was not until GSA IV's lessees and agents for the public utility AT & T began trenching for the on-going maintenance and upgrading of the telephone connection in or about 2013 that Gurgone began to complain about the legal description in the access or utility easements, and to claim a trespass due to the scrivener's errors.

30. Since on or around August 2014, Gurgone has installed a lock on a gate that provides the sole access road to the Site and has refused to provide a key to GSA IV.

31. Despite repeated requests, he has not removed the lock nor has he given GSA IV a key to the lock.

32. Gurgone has also posted multiple no trespassing signs on the locked gate that leads to the access road that say "Private Property No Trespassing" and Gurgone has handwritten on the sign in bold letters "All Cell Tower Contractors Stay Out! No 'Legal' Access.'" See attached Exhibit 5.

33. Counsel for GSA IV has made repeated written requests for arborist or landscaper estimates for the alleged damage to vegetation caused by the 2013 trenching activities. Despite repeated requests, neither Gurgone nor any of his various attorneys have ever provided copies of same to counsel.

34. Despite this failure to provide any substantiation to GSA IV's counsel, GSA IV, both directly and through its counsel have repeatedly made monetary offers to pay for the alleged damage for the vegetation caused by the utility connection trenching.

35. In written communications from both Gurgone, and his prior counsel, both have asserted that because the utility easement portion is missing from the documents associated with the Easement Purchase, that GSA IV is trespassing by maintaining its underground utilities and therefore Gurgone is somehow entitled to rent for GSA IV to continue to maintain its underground utilities connecting them from the Site to the public utility pedestal.

36. Gurgone has also done other acts of interference from time to time such as putting vehicles in the one access driveway so as to prevent vehicular passage by GSA IV or its agents.

37. Gurgone has also frequently confronted GSA IV and its agents telling them to leave his property and advising them that they had no legal right to be on his property.

**Count I – Declaratory Judgment**

38. GSA IV restates and realleges Paragraphs 1-37 as though fully set forth herein.

39. There exists an actual and justiciable controversy between Gurgone and GSA IV that requires a declaration of the rights between the parties and resolution of this Court.

40. GSA IV seeks the declaration that the scrivener's errors in the legal description for the access and utility access easement in the Easement do not render the Easement unenforceable.

41. GSA IV seeks the declaration that the legal description of the Access and Utility Easements in the Easement and the Assignment and Assumption of Lease Agreement be amended to reflect a right to use the same access road and location of the utilities since the communication tower was constructed in 1998.

20935389.6

42. Notwithstanding the scrivener's error in the legal description for the access and utility access easement in the Easement, GSA IV seeks the declaration that its general rights of access and utility easements are enforceable under the PCS Site Agreement.

43. GSA IV seeks the declaration that its twenty-foot-wide access easement is valid and that the access easement be judicially reformed to provide the missing call out in the legal description in the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4).

44. GSA IV seeks the declaration that the utility easement, as previously described on a survey prepared for Sprint in August 1998 (Ex.6), is the operative legal description that should be appended to the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4).

WHEREFORE, Defendant/Counter-Plaintiff Global Signal Acquisitions IV LLC respectfully requests the entry of an Order in its favor and against Plaintiff/Counter-Defendant Michael Gurgone, granting the following relief:

(1) A declaration as to the enforceability and terms of various agreements between the parties, and their predecessors in interest, specifically:

   (a) the PCS Site Agreement, Memorandum of the PCS Site Agreement, the Assignment and Assumption of Lease Agreement, and the Easement are valid and enforceable agreements;

   (b) the legal description of the access easement in the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4) be amended to reflect the missing call out in the legal description to reflect the full twenty-foot-wide access easement GSA IV bargained for as part of the Easement Transaction; and,

8

(c) the legal description of the utility easement from the August 1998 survey (Ex. 6) be appended to the Assignment and Assumption of Lease Agreement (Ex. 3) and as Exhibit C to the Easement (Ex. 4).

(2) For attorneys' fees and costs as called for in the PCS Site Agreement and the Easement.

(3) And for such other and further relief as this Court deems just and proper.

**Count II – Breach of Contract and Request for Injunctive Relief**

45. GSA IV restates and realleges Paragraphs 1-37 as though fully set forth herein.

46. The PCS Site Agreement and the Easement are valid and enforceable contracts.

47. GSA IV has fully performed its obligations under both the PCS Site Agreement and the Easement.

48. Gurgone is in breach of his obligations under both the PCS Site Agreement and Easement by denying GSA IV and its agents the 24 hours a day, seven days a week access it is entitled to under both the PCS Site Agreement and the Easement by doing the following acts:

    a. By locking the driveway gate and not providing GSA IV with the means to unlock it;

    b. By blocking the driveway with vehicles;

    c. By posting no trespass signs with a false message to GSA IV's agents that they had no "legal" right of access;

    d. By denying GSA IV and its agents access in an attempt to extort additional money from GSA IV in the form of "rent" for utility and access easements that GSA IV is already entitled to under the PCS Site Agreement and Easement; and,

    e. By generally blocking GSA IV and its agents access and only allowing such access upon notice, and justification for the visit.

49. As a result of said breaches of contract GSA IV has not been able to enjoy the full use and enjoyment of its property rights and has been damaged in at least the following ways as a result:

    a. Interruptions in its client's services at the Tower;

    b. Lack of regularly scheduled maintenance such as weed control which subjects GSA IV to potential civil liability from permitting authorities for not maintaining the Site properly;

    c. The costs of additional employee and attorney time incurred as a result of having to provide notice and to negotiate for access with Gurgone every time GSA IV or its agents need to access the Site; and

    d. The loss of revenue as a result of this Site being unmarketable for additional carrier collocation because of the restricted and uncertain access subject to the whims of Gurgone.

50. In addition to the aforementioned pecuniary and other damages, GSA IV has been deprived of the use and enjoyment of its unique property rights for which money damages are inadequate.

WHEREFORE, Defendant/Counter-Plaintiff Global Signal Acquisitions IV LLC respectfully requests the entry of an Order in its favor and against Plaintiff/Counter-Defendant Michael Gurgone, granting the following relief:

(1) Finding that Gurgone is in breach of the PCS Site Agreement and Easement agreement;

(2) The imposition of monetary damages in an amount to be determined at trial;

(3) For attorneys' fees and costs as called for in the PCS Site Agreement and the Easement;

(4) The issuance of a preliminary and permanent injunction prohibiting Gurgone from interfering with GSA IV and its agents' access and utility easement rights;

(5) And for such other and further relief as this Court deems just and proper.

Dated: August 22, 2017

Respectfully submitted,

GLOBAL SIGNAL ACQUISITIONS IV LLC

/s/ Carrie A. Hall

Carrie A. Hall (6269884)
cahall@taftlaw.com
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
312.527.4000
312.966.8591 (fax)

## **CERTIFICATE OF SERVICE**

I, Carrie A. Hall, an attorney of record in this matter, hereby certify that on August 22, 2017, I caused a copy of the foregoing *Amended Counterclaim* to be filed with the Court's CM/ECF system, which provides notice to all counsel of record via electronic mail.

s/ Carrie A. Hall