# EXHIBIT 1

● **Premises and Use.** Owner leases to SprintCom, Inc., a Kansas corporation (printCom"), the site described below:
[Check appropriate box(es)]
☒ Land consisting of approximately 875_ square feet upon which SprintCom will construct its ☒ equipment base station and ☒ antenna structure;
☐ Building interior space consisting of approximately _____ square feet;
☐ Building exterior space for attachment of antennas;
☐ Building exterior space for placement of base station equipment;
☐ Tower antenna space between the _____ foot and _____ foot level on the Tower,
☐ Space required for cable runs to connect PCS equipment and antennas,

in the location(s) ("Site") shown on Exhibit A, together with a non-exclusive easement for reasonable access thereto and to the appropriate, in the discretion of SprintCom, source of electric and telephone facilities. The Site will be used by SprintCom for the purpose of installing, removing, replacing, modifying, maintaining and operating, at its expense, a personal communications service system facility ("PCS"), including, without limitation, antenna equipment, cable wiring, related fixtures and, if applicable to the Site, an antenna structure. SprintCom will use the Site in a manner which will not unreasonably disturb the occupancy of Owner's other tenants  SprintCom will have access to the Site 24 hours per day, 7 days per week.

**2.  Term.** The term of this Agreement (the "Initial Term") is 5 years, commencing on the date ("Commencement Date") both SprintCom and Owner have executed this Agreement. This Agreement will be automatically renewed for four additional terms (each a "Renewal Term") of 5 years each, unless SprintCom provides Owner notice of intention not to renew not less than 90 days prior to the expiration of the Initial Term or any Renewal Term.

**3.  Rent.** Until the earlier of (a) that date which is 30 days after the issuance of a building permit, or (b) the first day of the month following the commencement of the physical preparation of the Site, the rent will be a one-time aggregate payment of $▆▆▆▆, the receipt of which Owner acknowledges. Thereafter, rent will be paid in equal monthly installments of ▆▆▆▆ (until increased as set forth herein), partial months to be prorated, in advance.  Rent for each Renewal Term will be ● annual rent in effect for the final year of the Initial Term or prior Renewal ▆rm, as the case may be, increased by ▆▆▆▆

**4.  Title and Quiet Possession.**  Owner represents and agrees (a) that it is the Owner of the Site; (b) that it has the right to enter into this Agreement; (c) that the person signing this Agreement has the authority to sign; (d) that SprintCom is entitled to access to the Site at all times and to the quiet possession of the Site throughout the Initial Term and each Renewal Term so long as SprintCom is not in default beyond the expiration of any cure period; and (e) that Owner shall not have unsupervised access to the Site or to the PCS equipment.

**5.**   **Assignment/Subletting.** Tenant shall have the right to sublease or assign its rights under this Agreement without notice to or consent of Owner.

**6.  Notices.** All notices must be in writing and are effective only when deposited in the U.S. mail, certified and postage prepaid, or when sent via overnight delivery. Notices to SprintCom are to be sent to:  SprintCom, Inc., Attention: Director-Network Real Estate, 1200 Main Street, Kansas City, Missouri  64105, with a copy to Sprint Spectrum L.P., 9801 West Higgins Road, Rosemont, IL 60018. Notices to Owner must be sent to the address shown underneath Owner's signature

**7. Improvements.** SprintCom may, at its expense, make such improvements on the Site as it deems necessary from time to time for the operation of the PCS system. Owner agrees to cooperate with SprintCom with respect to obtaining any required zoning approvals for the Site and such improvements.  Upon termination or expiration of this Agreement, SprintCom may remove its equipment and improvements and will restore the Site to substantially the condition existing on the Commencement Date, except for ordinary wear and tear and casualty loss

**8.  Compliance with Laws.** Owner represents that Owner's property (including the Site), and all improvements located thereon, are in substantial compliance with building, life/safety, disability and other laws, codes and regulations of applicable governmental authorities. SprintCom will substantially comply with all applicable laws relating to its possession and use of the Site, including without limitation posting requirements of the Federal Communications Commission.

**9. Interference.** SprintCom will resolve technical interference problems with er equipment located at the Site on the Commencement Date or any ▆ipment that becomes attached to the Site at any future date when SprintCom desires to add additional equipment to the Site. Likewise, Owner will not permit or suffer the installation of any future equipment which (a) results in technical interference problems with SprintCom's then existing equipment or (b) encroaches onto the Site.

**10. Utilities.** Owner represents that utilities adequate for SprintCom's use of the Site are available. SprintCom will pay for all utilities used by it at the Site. Owner will cooperate with SprintCom in SprintCom's efforts to obtain utilities from any location provided by Owner or the servicing utility, including signing any easement or other instrument reasonably required by the utility company.

**11. Termination.**  SprintCom may terminate this Agreement at any time by notice to Owner without further liability if SprintCom does not obtain all permits or other approvals (collectively, "approval") required from any governmental authority or any easements required from any third party to operate the PCS system, or if any such approval is canceled, expires or is withdrawn or terminated, or if Owner fails to have proper ownership of the Site or authority to enter into this Agreement, or if SprintCom, for any other reason, in its sole discretion, determines that it will be unable to use the Site  Upon termination, all prepaid rent will be retained by Owner unless such termination is due to Owner's failure of proper ownership or authority, or such termination is a result of Owner's default.

· ·**12. Default.**  If either party is in default under this Agreement for a period of (a) 10 days following receipt of notice from the non-defaulting party with respect to a default which may be cured solely by the payment of money, or (b) 30 days following receipt of notice from the non-defaulting party with respect to a default which may not be cured solely by the payment of money, then, in either event, the non-defaulting party may pursue any remedies available to it against the defaulting party under applicable law, including, but not limited to, the right to terminate this Agreement. If the non-monetary default may not reasonably be cured within a 30-day period, this Agreement may not be terminated if the defaulting party commences action to cure the default within such 30-day period and proceeds with due diligence to fully cure the default.

**13. Indemnity.**  Owner and SprintCom each indemnifies the other against and holds the other harmless from any and all costs (including reasonable attorneys' fees) and claims of liability or loss which arise out of the ownership, use and/or occupancy of the Site by the indemnifying party  This indemnity does not apply to any claims arising from the sole negligence or intentional misconduct of the indemnified party.  The indemnity obligations under this Paragraph will survive termination of this Agreement.

**14. Hazardous Substances.**  Owner represents that it has no knowledge of any substance, chemical or waste (collectively, "substance") on the Site that is identified as hazardous, toxic or dangerous in any applicable federal, state or local law or regulation. SprintCom will not introduce or use any such substance on the Site in violation of any applicable law.

**15. Subordination and Non-Disturbance.**  This Agreement is subordinate to any mortgage or deed of trust now of record against the Site. However, promptly after the Agreement is fully executed, Owner will use diligent efforts to obtain a non-disturbance agreement reasonably acceptable to SprintCom from the holder of any such mortgage or deed of trust.

**16. Taxes.** SprintCom will be responsible for payment of all personal property taxes assessed directly upon and arising solely from its use of the communications facility on the Site. SprintCom will pay to Owner any increase in real property taxes attributable solely to any improvements to the Site made by SprintCom within 60 days after receipt of satisfactory documentation indicating calculation of SprintCom's share of such real estate taxes and payment of the real estate taxes by Owner.  Owner will pay when due all other real estate taxes and assessments attributable to the property of Owner of which the Site is a part. Owner shall deliver a copy of any tax bill or notice of reassessment to SprintCom within five (5) days of Owner's receipt of the same.  SprintCom shall have the right, at its own expense, and, if necessary, in the name of but without expense to Owner, to contest, by appropriate proceedings, conducted with due diligence and in good faith, the validity of the amount of taxes or reassessment, as applicable, to the Site.

**17. Insurance.** SprintCom will procure and maintain commercial general liability insurance, with limits of not less than $1,000,000 combined single limit per occurrence for bodily injury and property damage liability, with a certificate of insurance to be furnished to Owner within 30 days of written request.  Such policy will provide that cancellation will not occur without at least 15 days prior written notice to Owner.  Each party hereby waives its right of recovery against the other for any loss or damage covered by any insurance policies maintained by the waiving party.  Each party will cause each insurance policy obtained by it to provide that the insurance company waives all rights of recovery against the other party in connection with any damage covered by such policy.

**18. Maintenance.** SprintCom will be responsible for repairing and maintaining the PCS system and any other improvements installed by SprintCom at the Site in a proper operating and reasonably safe condition; provided, however if any such

repair or maintenance is required due to the acts of Owner, its agents or employees, Owner shall reimburse SprintCom for the reasonable costs incurred by SprintCom to restore the damaged areas to the condition which existed immediately prior thereto. Owner will maintain and repair all other portions of the property of which the Site is a part in a proper operating and reasonably safe condition.

**19. Miscellaneous.** (a) This Agreement applies to and binds the heirs, successors, executors, administrators and assigns of the parties to this Agreement; (b) this Agreement is governed by the laws of the state in which the Site is located; (c) if requested by SprintCom, Owner agrees promptly to execute and deliver to SprintCom a recordable Memorandum of this Agreement in the form of Exhibit B; (d) this Agreement (including the Exhibits) constitutes the entire agreement between the parties and supersedes all prior written and verbal agreements, representations, promises or understandings between the parties. Any amendments to this Agreement must be in writing and executed by both parties; (e) if any provision of this Agreement is invalid or unenforceable with respect to any party, the remainder of this Agreement or the application of such provision to persons other than those as to whom it is held invalid or unenforceable, will not be affected; and each provision of this Agreement will be valid and enforceable to the fullest extent permitted by law; and (f) the prevailing party in any action or proceeding in court or mutually agreed upon arbitration proceeding to enforce the terms of this Agreement is entitled to receive its reasonable attorneys' fees and other reasonable enforcement costs and expenses from the non-prevailing party.

**20. Non-Binding Until Fully Executed.** This Agreement is for discussion purposes only and does not constitute a formal offer by either party. This Agreement is not and shall not be binding on either party until and unless it is fully executed by both parties

The following Exhibits are attached to and made a part of this Agreement: Exhibits A , B and _____.

After site is constructed, Sprintcom shall grade And Topdress Driveway From Bjork Street to site

Attach Exhibit A - Site Description

Attach Exhibit B - Memorandum of PCS Site Agreement

OWNER: Michael J. and Sherry Gurgone.

By: _____

Its: _____

S.S./Tax No.: 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

Address: 1121 Bjork Drive

New Lenox, IL 60451

☐ See Exhibit A1 for continuation of Owner signatures

Date: _____

SPRINTCOM, INC., a Kansas corporation

By: _____

Its: Area Manager

Date: 5/14/98

Version 1

# EXHIBIT A

Site Name: **Handorf**

PCS Site Agreement

Site I. D: 773 / H

Site Description

Site situated in the County of Will, State of Illinois, commonly described as follows: 1121 Bjorkl Drive, New Lenox, IL 60451

Assessor's PIN: 15-08-08-400-037

Legal Description:

THAT PART OF THE WEST 201.10 FEET OF THE EAST 793.80 FEET OF THE SOUTH 633.95 FEET OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, LYING SOUTH OF THE SOUTHEASTERLY RIGHT OF WAY LINE OF FEDERAL AID INTERSTATE ROUTE 80, ACCORDING TO THE INSTRUMENT RECORDED JANUARY 7, 1965 AS DOCUMENT NUMBER 1025970, ALSO, THE WEST 296.06 FEET OF THE EAST 592.70 FEET OF THE NORTH 46.00 FEET OF THE SOUTH 633.95 FEET OF SAID EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, ALL IN TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS. CONTAINING 3.00 ACRES, MORE OR LESS.



Owner Initials

SprintCom Initials

# EXHIBIT B

## PCS Site Agreement

## Memorandum of PCS Site Agreement

Site Name  American Legion

Site I. D: 773 ~~Ø~~ H

(The Above Space For Recorder's Use Only)

| Version 1 | March 97 |
|---|---|

This memorandum evidences that a lease was made and entered into by written PCS Site Agreement dated *May 14*, 19~~98~~ Michael J. and Sherry Gurgone ("Owner") and SprintCom, Inc., a Kansas corporation ("SprintCom").

Such Agreement provides in part that Owner leases to SprintCom a certain site ("Site") located at 1121 Bjork Drive, , County of Will, State of Illinois, within the property of Owner which is described in Exhibit A attached hereto, with grant of easement for unrestricted rights of access thereto and to electric and telephone facilities for a term of five (5) years commencing on *May 14*, 19~~98~~ which term is subject to four (4) additional five (5) year extension periods by SprintCom.

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year first above written.

| "Owner" | "SprintCom" |
|---|---|
| Michael J. and Sherry Gurgone | SprintCom, Inc., a Kansas corporation |
| By: _Michael J. Gurgone_ | By: _James G. Meyers_ |
| Name: _Sheri S. Gurgone_ | Name: **James G. Meyers** |
| Title: _____ | Title: **Area Manager** |
| ☐ See Exhibit B1 for continuation of Owner signatures | Address: _____ |
| Address: _____ | _____ |

Owner Initials _____

SprintCom Initials _____

Attach Exhibit A - Site Description

Return Address:  Sprint PCS
9801 West Higgins Road, 2nd Floor
Rosemont, IL 60018

**Site Name: Handorf**

# EXHIBIT A

PCS Site Agreement

Site I. D: 773 ✗ H

## Site Description

Site situated in the County of Will, State of Illinois, commonly described as follows:. 1121 Bjorkl Drive, New Lenox, IL 60451

Assessor's PIN: 15-08-08-400-037

Legal Description:

THAT PART OF THE WEST 201.10 FEET OF THE EAST 793.80 FEET OF THE SOUTH 633.95 FEET OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, LYING SOUTH OF THE SOUTHEASTERLY RIGHT OF WAY LINE OF FEDERAL AID INTERSTATE ROUTE 80, ACCORDING TO THE INSTRUMENT RECORDED JANUARY 7, 1965 AS DOCUMENT NUMBER 1025970, ALSO, THE WEST 296.06 FEET OF THE EAST 592.70 FEET OF THE NORTH 46.00 FEET OF THE SOUTH 633.95 FEET OF SAID EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, ALL IN TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS. CONTAINING 3.00 ACRES, MORE OR LESS.



Owner Initials

SprintCom Initials

STATE OF _Illinois_

COUNTY OF _DuPage_

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _Michael J_ _and Sherri S Gurgone_, who acknowledged that  he/she/they did sign the foregoing instrument and that same is his/her/their free act and deed personally.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____ this _27th_ day of _April_, 199_8_.

My commission expires.

OFFICIAL SEAL
HERMAN G BRUECKNER
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 13,2001

_____
Notary Public

STATE OF _____

COUNTY OF _____

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _____ _____, who acknowledged that  he/she/they did sign the foregoing instrument and that same is his/her/their free act and deed personally.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____ this _____ day of _____, 199__.

My commission expires:

_____
Notary Public

**SPRINTCOM, INC. NOTARY BLOCK:**

STATE OF ___ILLINOIS___

COUNTY OF ___COOK___

      BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named SprintCom, Inc., a Kansas corporation, by ___**James G. Meyers**___, its ___**Area Manager**___ who acknowledged that s/he did sign the foregoing instrument and that the same is the free act and deed of said corporation and her/his free act and deed personally and as such officer.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Rosemont Illinois_ this _14th_ day of _May_, 1998

My commission expires.

_Valerie Cardinallo_
_____
Notary Public

```
OFFICIAL SEAL
VALERIE CARDINALLO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/02/98
```

# EXHIBIT 2

# EXHIBIT B

## PCS Site Agreement

## Memorandum of PCS Site Agreement

**Site Name** American Legion

**Site I. D:** 773 ~~X~~ H

(The Above Space For Recorder's Use Only)

Version 1          March 97

This memorandum evidences that a lease was made and entered into by written PCS Site Agreement dated _May 14_, 19~~98~~ Michael J. and Sherry Gurgone ("Owner") and SprintCom, Inc., a Kansas corporation ("SprintCom").

Such Agreement provides in part that Owner leases to SprintCom a certain site ("Site") located at 1121 Bjork Drive, , County of Will, State of Illinois, within the property of Owner which is described in Exhibit A attached hereto, with grant of easement for unrestricted rights of access thereto and to electric and telephone facilities for a term of five (5) years commencing on _May 14_, 19~~98~~ which term is subject to four (4) additional five (5) year extension periods by SprintCom.

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year first above written.

| "Owner" | "SprintCom" |
|---|---|
| Michael J. and Sherry Gurgone | SprintCom, Inc., a Kansas corporation |
| By: _Michael J. Gurgon_ | By: _Jerald G. Meyers_ |
| Name: _Sherri S. Gurgon_ | Name: **James G. Meyers** |
| Title: _____ | Title: **Area Manager** |
| ☐ See Exhibit B1 for continuation of Owner signatures | Address: _____ |
| Address: _____ | _____ |

Owner Initials _____

SprintCom Initials _____

Attach Exhibit A - Site Description _____

Return Address: Sprint PCS
9801 West Higgins Road, 2^nd^ Floor
Rosemont, IL 60018

# EXHIBIT A

### PCS Site Agreement

Site I. D: 773 ⚹H

### Site Description

Site situated in the County of Will, State of Illinois, commonly described as follows:. 1121 Bjorkl Drive, New Lenox, IL 60451

Assessor's PIN: 15-08-08-400-037

Legal Description:

THAT PART OF THE WEST 201.10 FEET OF THE EAST 793.80 FEET OF THE SOUTH 633.95 FEET OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, LYING SOUTH OF THE SOUTHEASTERLY RIGHT OF WAY LINE OF FEDERAL AID INTERSTATE ROUTE 80, ACCORDING TO THE INSTRUMENT RECORDED JANUARY 7, 1965 AS DOCUMENT NUMBER 1025970, ALSO, THE WEST 296.06 FEET OF THE EAST 592.70 FEET OP THE NORTH 46.00 FEET OF THE SOUTH 633.95 FEET OF SAID EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, ALL IN TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS. CONTAINING 3.00 ACRES, MORE OR LESS.



Owner Initials

SprintCom Initials

STATE OF _Illinois_

COUNTY OF _DuPage_

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _Michael J_ _and Sherri S Gurgone_, who acknowledged that he/she/they did sign the foregoing instrument and that same is his/her/their free act and deed personally.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____ this _27th_ day of _April_, 199_5_.

My commission expires.

OFFICIAL SEAL
HERMAN G BRUECKNER
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 13,2001

_____
Notary Public

STATE OF _____

COUNTY OF _____

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _____, who acknowledged that he/she/they did sign the foregoing instrument and that same is his/her/their free act and deed personally.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____ this _____ day of _____, 199__.

My commission expires:

_____
Notary Public

**SPRINTCOM, INC. NOTARY BLOCK:**

STATE OF ___ILLINOIS___

COUNTY OF ___COOK___

      BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named SprintCom, Inc., a Kansas corporation, by ___**James G. Meyers**___, its ___**Area Manager**___ who acknowledged that s/he did sign the foregoing instrument and that the same is the free act and deed of said corporation and her/his free act and deed personally and as such officer.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Rosemont Illinois_ this _14th_ day of _May_, 1998

My commission expires.

_Valerie Cardinallo_
               Notary Public

```
OFFICIAL SEAL
VALERIE CARDINALLO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/02/98
```

# EXHIBIT 3

Prepared by:
Global Signal Acquisitions IV LLC
Attn: Legal Dept.
301 N. Cattlemen Road #300
Sarasota FL 34232

Site# 3026997 Gurgone (Will County, Illinois)

O'Connor Title Services, Inc.
162 West Hubbard Street
Chicago, IL 60610

DET Date 06/14/2006      Time 09:13:36
Recording Fees:                    26.75
IL Rental Hsng Support Prog:  10.00

## ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASE AGREEMENT (this "Assignment") is made this 2nd day of June, 2006, by and between **Michael J. Gurgone and Sherri Gurgone** ("Assignor") whose address is 1121 Bjork Drive, New Lenox, IL 60451 and **Global Signal Acquisitions IV LLC**, a Delaware limited liability company ("Assignee") whose address is 301 N. Cattlemen Road, Suite 300, Sarasota, FL 34232.

WHEREAS, Assignor is the current lessor under that certain lease dated May 14, 1998 originally by and between Michael and Sherri Gurgone and SprintCom, Inc., a Kansas corporation as more fully described in Exhibit "A" attached hereto and incorporated by reference herein (hereafter the "Ground Lease"); and

WHEREAS, Assignor has agreed to convey, transfer and assign to Assignee all of its right, title and interest in and to that certain Ground Lease (the "Assigned Lease") and Assignee has agreed to accept an assignment thereof; and

WHEREAS, the Assigned Lease pertains to certain real property more particularly described on Exhibit "B" attached hereto and incorporated herein by this reference (the "Subject Property"); and

### OPERATIVE PROVISIONS

O'___ ___tle
Se___  ___, Inc.
___ 659-0201

NOW, THEREFORE, for and in consideration of the sum of $10.00, the mutual covenants and conditions contained herein, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    The Background Recitals hereinabove are true and correct and are incorporated herein by this reference.

2.    The Assignor hereby assigns to Assignee all of its right, title and interest in and to the Assigned Lease, together with any amendments to the Assigned Lease, and Assignee hereby assumes and agrees to perform all of the Assignor's obligations under the Assigned Leases upon the terms and conditions set forth in the Assigned Leases.

3.    Except as expressly set forth herein, the terms of the Assigned Lease shall remain in full force and effect, unaltered by this Assignment.

4. Assignor hereby covenants and agrees that the Assigned Lease is in full force and effect, has not otherwise been modified or extended, and that as of the date hereof, Assignor is not aware of any defaults under the Assigned Lease. Assignor further covenants that it has full right and authority to execute and deliver this instrument. Assignor covenants that it is the lawful owner of the landlord's interest in the Assigned Lease and that no other party has any interest in or claim against the Landlord's interest in the Assigned Lease, that Assignor has full right and authority to execute and deliver this instrument, and to assign the Assigned Lease to Assignee.

5. Assignee hereby agrees to completely indemnify and hold harmless Assignor from and against any and all liability, claims, demands, breaches, suits or any other cause of action (collectively, the "Claims") relating to, arising out of, or otherwise in connection with the Assigned Leases, which Claims relate to the occurrence or non-occurrence of any event which post date the date of this Assignment.

6. Assignor hereby covenants, agrees and represents that all consents, approvals and authorizations necessary to consummate the transaction contemplated hereby have been procured.

7. Assignor hereby covenants and agrees that any and all rent, fees or other payments under the Assigned Lease is now fully paid and current.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be duly executed as of the date first above written.

*[Remainder of page intentionally left blank. Signatures and acknowledgments to follow.]*

Witnesses:

**ASSIGNOR:**
**Michael J. Gurgone and Sherri Gurgone**

_Christa Orr_
Print Name: Christian B. Spaxion

_Michael J. Gurgone_
Michael J. Gurgone

_Chris Orr_
Print Name: _____

_Sherri Gurgone_
Sherri Gurgone

STATE OF _Illinois_
COUNTY OF _Will_

Personally appeared before me, the undersigned authority in and for the said county and state, on this _31st_ day of _May_, 2006, within in my jurisdiction, the within named **Michael J. Gurgone and Sherri Gurgone** who acknowledged that they executed the above and foregoing instrument. They are personally known to me or have produced _Driver's Licenses_ (type of identification) as identification.

NOTARIAL SEAL

_Rebecca L. Bright_
Name: _Rebecca L. Bright_
Notary – State of _Illinois_
My Commission Expires: _10/21/07_

```
*OFFICIAL SEAL*
Rebecca L Bright
Notary Public, State of Illinois
My Commission Expires Oct. 21, 2007
```

Witnesses:

**ASSIGNEE:**
**Global Signal Acquisitions IV LLC,**
a Delaware limited liability company

Print Name: John Hosford

By: _____
Name:
As its: **Yakin Madhoo**
**Assistant Treasurer**

Print Name: **Yvette Cooley**

STATE OF FLORIDA
COUNTY OF SARASOTA

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, on this 30 day of May , 2006, within my jurisdiction, the within named Yakin Madhoo who acknowledged that he is Assistant Treasurer of Global Signal Acquisitions IV LLC, a Delaware limited liability company, and as its act and deed he executed the above and foregoing instrument, after first having been duly authorized by said company so to do. He is personally known to me or has produced _____ (type of identification) as identification.

NOTARIAL SEAL

Name: Melissa Ann Venezia
Notary – State of Florida
My Commission Expires: 10-07-06

MELISSA ANN VENEZIA
Commission # DD155673
Expires Oct. 7, 2006
Bonded Through Advantage Notary

4

EXHIBIT "A"

Lease Description

That certain PCS Site Agreement dated May 14, 1998 originally by and between Michael and Sherri Gurgone and SprintCom, Inc., a Kansas corporation, as evidenced by the Memorandum of PCS Site Agreement dated May 14, 1998 and recorded in Instrument No. R98-098483 of the Official Records of Will County, Illinois, as affected by the Agreement Regarding Ground Lease dated May 11, 2005, now held by Assignor and Global Signal Acquisitions II LLC, by Master Lease and Sublease dated May 26, 2005 between STC Five LLC, Sprint Spectrum L.P., Global Signal Acquisitions II LLC, and Global Signal Inc., and as affected by Site Designation Supplement to Master Lease and Sublease Agreement dated May 26, 2005 and recorded in Instrument No. R2005098439 of the Official Records of Will County, Illinois.



EXHIBIT "B"

Subject Property

## Lease Area

COMMENCING AT THE NORTHWEST CORNER OF LOT 1 IN CAROL ESTATES, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 276.06; THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS WEST, 11 FEET; THENCE NORTH 46 DEGREES 39 MINUTES 20 SECONDS WEST, 21 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES, 36 SECONDS WEST, 313 FEET; THENCE SOUTH 43 DEGREES 02 MINUTES 36 SECONDS WEST, 49 FEET; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS WEST, 24 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS EAST, 33 FEET; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 22.7 FEET; THENCE NORTH 01 DEGREES 48 MINUTES 12 SECONDS WEST, 33 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES 36 SECONDS WEST, 22.7 FEET TO SAID POINT OF BEGINNING.

together with:

## Access Easement

COMMENCING AT THE NORTHWESTT CORNER OF LOT 1 IN CAROL ESTATES, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 276.06 FEET TO THE POINT OF BEGINNING; THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS WEST, 11 FEET; THENCE NORTH 46 DEGREES 39 MINUTES 20 SECONDS WEST, 21 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES, 36 SECONDS WEST, 313 FEET; THENCE SOUTH 43 DEGREES 02 MINUTES 36 SECONDS WEST, 49 FEET; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS WEST, 57 FEET; THENCE SOUTH 88 DEGREES 11 MINUTES 48 SECONDS WEST, 20 FEET; THENCE NORTH 01 DEGREES 57 MINUTES 24 SECONDS EAST, 66 FEET; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 330 FEET; THENCE SOUTH 46 DEGREES 39 MINUTES 20 SECONDS EAST, 38 FEET; THENCE SOUTH 01 DEGREES 39 MINUTES 20 EAST, 19 FEET TO THE NORTH RIGHT OF WAY LINE OF BJORK DRIVE; THENCE SOUTH 88 DEGREES 02 MINUTES 36 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE, 20 FEET TO SAID POINT OF BEGINNING.



08-08-400-037

# EXHIBIT 4

This instrument prepared by
and after recording return to:
Attn: Legal Department
Global Signal Acquisitions IV LLC.
301 North Cattlemen Rd. Suite 300
Sarasota, Florida 34232

Site: 3026997 Gurgone (Will County, Illinois)

O'Connor Title Services, Inc.
162 West Hubbard Street
Chicago, IL 60610

## EASEMENT

THIS EASEMENT (this "Easement") is made this 2nd day of June, 2006, by and between Michael J. Gurgone joined by his wife Sherri Gurgone ("Grantor"), whose address is 1121 Bjork Drive, New Lenox, Illinois 60451 and Global Signal Acquisitions IV LLC ("Grantee"), whose address is 301 North Cattlemen Road, Suite 300, Sarasota, Florida 34232.

### Recitals

Grantor is the owner of the real property described in Exhibit A attached hereto (the "Grantor Property"). Grantor agrees to grant the easement described below for the purposes consistent with the ownership, location and operation of one or more communications towers in accordance with the provisions described below.

### Terms

In consideration of the premises, the sum of $10.00, and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, Grantor and Grantee hereby agree as follows:

1. _Existing Ground Lease_. Notwithstanding any contrary provision set forth herein, the rights granted by this Easement shall be subject to the existing Ground Lease between Grantor and SprintCom, Inc. dated May 14, 1998 (the "Ground Lease").

2. _Grant of Easement_. Grantor for itself, its successors and assigns, hereby grants and conveys unto Grantee, its lessees, licensees, successors and assigns a fully paid exclusive, perpetual easement on, over, across and through the portion of the Grantor Property described in Exhibit B attached hereto (the "Tower Area") together with a fully paid nonexclusive perpetual easement over the portion of the Grantor Property described in Exhibit C (the "Access and Utility Areas"). The Tower Area shall be used for all purposes consistent with the ownership, location and operation of communications towers, including but not limited to erecting, installing, operating, maintaining, repairing, replacing, rebuilding, altering, inspecting, improving, and removing communications towers, tower guy wires, guy wire anchors, guy stubs, ground connections, equipment buildings, equipment, equipment shelters and other ancillary structures, and all fixtures, attachments, equipment and accessories related thereto. The Access and Utility Areas shall be used for ingress and egress and utility access for the same, and all other related general and miscellaneous uses, which uses shall not interfere with Grantor's, or their successors or assigns, use and enjoyment of the Access and Utility Areas of the Grantor Property.

3. Use. The Tower Area shall be used for the purpose of erecting, installing, operating and maintaining radio and communications towers, equipment buildings, and equipment shelters, including leasing, subleasing, and licensing space thereon to third parties. Grantee may make any improvement, alteration or modifications to the Tower Area as are deemed appropriate by Grantee, in its discretion for the purposes set forth herein. At all times during the Term of the Easement, Grantee and its customers, tenants, lessees, sublessees, and licensees shall have the right to use, and shall have free access to, the Tower Area and Access and (Guy and/or Utility) Areas seven (7) days a week, twenty-four (24) hours a day. Grantee shall have the exclusive right to lease, sublease, license, or sublicense any radio/communications tower or any other structure or equipment on the Tower Area, and shall also have the exclusive right to lease or sublease to third parties any portion of the Tower Area, itself, but no such lease, sublease or license shall relieve or release Grantee from its obligations under this Easement. Grantee and its customers shall have the right to erect, install, maintain, and operate on the Tower Area such equipment, structures, fixtures, signs, and personal property as described in Paragraph 2, and such property, including the equipment, structures, fixtures, signs, and personal property currently on the Tower Area, shall not be deemed to be part of the Tower Area, but shall remain the property of Grantee or its customers, as applicable. At any time, Grantee or its customers shall have the right to remove their equipment, structures, fixtures, signs, and personal property from the Tower Area.

4. Duration. The duration of the Easement granted herein (the "Term") shall be perpetual, unless Grantee provides written, recordable notice of its intent to terminate this Easement, in which event this Easement shall terminate upon Grantee's recordation of any such notice. However, in the event Grantee, its successors and/or assigns, removes all of the communications tower(s) which is/are the subject of this Easement, and fails to initiate the reconstruction of a replacement tower within 365 days from the date of removal of the last such tower, this Easement shall automatically terminate.

5. Easement Consideration. Grantor hereby acknowledges the receipt, in advance, of all consideration due hereunder. Accordingly, no additional consideration shall be due during the term of this Easement.

6. Assignment. Grantee may assign its rights hereunder in whole or in part to any person or entity without consent from Grantor; provided, however, Grantee shall provide notice to Grantor of any assignment pursuant to Paragraph 10 below. After delivery by Grantee to Grantor of an instrument of assumption by an assignee that assumes all of the obligations of Grantee under this Easement, Grantee will be relieved of all liability hereunder.

7. Warranties and Agreements.

(a) Grantor represents and warrants that it is the owner in fee simple of the Grantor Property, free and clear of all liens and encumbrances, and that, subject to the rights of the tenant under the Ground Lease, it alone has full right to grant the Easements. Grantor further represents and warrants that Grantee shall peaceably and quietly hold and enjoy the easement rights without any hindrance, molestation or ejection by Grantor, its successors or assigns, or those claiming through them. Grantor shall have no right to use or permit to be used the Grantor Property in any manner that is inconsistent with Grantee's rights hereunder. Grantor hereby covenants and represents that with respect to the Tower Area and Access and Utility Areas: (i) there currently exist no leases, subleases, licenses, management agreements,

2

concessions or other agreements, written or oral, granting to any party or parties the right of use, management, or occupancy of any portion of the Tower Area and Access and Utility Areas, other than leases disclosed to Grantee in writing; (ii) there are no outstanding options or rights of first refusal to purchase the Grantor Property or any portion thereof or interest therein; and (iii) there are no parties (other than Grantor andlessee under the Ground Lease) in possession of the Tower Area and Access and Utility Areas.

(b) INTENTIONALLY OMITTED.

(c) Grantor shall promptly pay all real estate taxes and assessments against the Grantor Property when due and shall avoid any delinquencies with respect thereto. If Grantor fails to make any such payments Grantee may (without obligation), after providing ten (10) days written notice to Grantor, make such payment or perform such obligation on behalf of Grantor. The full amount of any payments so made or costs so incurred by Grantee (including any attorneys' fees incurred in connection with Grantee performing such obligation) shall be paid by Grantor to Grantee with interest at the statutory rate thereon.

(d) Grantor shall not do or permit anything that will interfere with or negate any special use permit or approval pertaining to the Tower Area or cause any tower on the Tower Area to be in nonconformance with applicable local, state, or federal laws. Grantor covenants and agrees that it may not, and shall not, subdivide any master tract of which the Grantor Property is a part without first seeking Grantee's written approval, which approval shall not be unreasonably withheld. Grantee's consent may be withheld if any such subdivision will adversely affect the Tower Area's compliance (including any improvements located thereon) with applicable laws, rules, ordinances and/or zoning, or otherwise adversely affects Grantee's ability to utilize the Grantor Property for its intended purposes. Grantor shall not initiate or consent to any change in the zoning of the Grantor Property or any property of Grantor contiguous to, surrounding, or in the vicinity of the Grantor Property, or impose or consent to any other restriction that would prevent or limit Grantee from using the Grantor Property for the uses intended by Grantee.

(e) Grantor shall cooperate with Grantee, at no cost to Grantor, in any effort by Grantee to obtain certificates, permits, licenses, and other approvals that may be required by any governmental authorities. Grantor agrees to execute any necessary applications, consents or other documents as reasonably necessary for Grantee to apply for and obtain the proper zoning approvals required to use and maintain the Grantor Property as a communications tower site.

(f) Grantor has complied with all environmental, health, and safety laws with respect to the Grantor Property, and no action, suit, proceeding, hearing, investigation, charge, complaint, claim, demand, or notice has been filed or commenced against Grantor or regarding the Grantor Property alleging any failure so to comply. Without limiting the generality of the preceding sentence, Grantor and the Grantor Property are in compliance with all environmental, health, and safety laws. No asbestos-containing thermal insulation or products containing PCB, formaldehyde, chlordane, or heptachlor or other hazardous materials have been placed on or in the Grantor Property by Grantor or, to the knowledge of Grantor, by any prior owner or user of the Grantor Property. To the knowledge of Grantor, there has been no release of or contamination by hazardous materials on the Grantor Property.

(g)     Grantor has no knowledge of any fact or condition that could result in the termination or reduction of the current access from the Grantor Property to existing highways and roads, or to sewer or other utility services serving the Grantor Property. The Grantor Property abuts on and has direct vehicular access to a public road, or has access to a public road via a permanent, irrevocable, appurtenant easement benefiting the parcel of real property, and access to the property is provided by paved public right-of-way with adequate curb cuts available.

8.  Non-Disturbance. During the Term of the Easement, Grantor will not grant any other easement or ground lease to any party if such easement or ground lease would in any way effect or interfere with Grantee's radio/communications equipment and/or antennas.

9.  Signal Blockage and/or Transmission Interruption. Grantee is utilizing the Grantor Property for the purpose of transmitting and receiving telecommunication signals to and from the Grantor Property. Grantee and Grantor recognize that the purpose behind the Easement would be frustrated if the telecommunication signals were partially or totally blocked or if an obstruction were built that would cause interference with such transmission. Grantor, its successors and assigns, shall use its best efforts to prevent the occurrence of any of the foregoing upon or within any property owned by, or otherwise under the control of Grantor, and shall promptly undertake any remedial action necessary to do so.

10. Notice and Payments. Any notice, document or payment required or permitted to be delivered or remitted hereunder or by law shall be deemed to be delivered or remitted, whether actually received or not, when deposited in the United States mail, postage prepaid, certified or registered, return receipt requested, addressed to the parties hereto at the respective addresses set out below, or at such other address as they shall have theretofore specified by written notice delivered in accordance herewith:

Grantor:            Michael and Sherri Gurgone
                    1121 Bjork Drive
                    New Lenox, IL  60451
                    Phone No.:  (815) 462-0801

Grantee:            Global Signal Acquisitions IV LLC
                    301 N. Cattlemen Road, Suite 300
                    Sarasota, FL 34232
                    Attention:  Legal Department
                    Phone No.:  (941) 364-8886
                    Fax No: (941) 364-8761

11. Force Majeure. The time for performance by either party of any term, provision, or covenant of this Easement shall be deemed extended by the time lost due to delays resulting from acts of God, strikes, civil riots, floods, labor or supply shortages, material or labor restrictions by governmental authority, litigation, injunctions, lack of access to required utilities, and any other cause not within the control of either party, as the case may be.

12. Indemnities. Grantor hereby indemnifies, holds harmless, and agrees to defend Grantee, and its officers, directors, shareholders, agents, employees, and attorneys, for,

4

from, and against all damages asserted against or incurred by any of them by reason of, or resulting from: (i) the invalidity of, or a breach by Grantor of, any representation, warranty, or covenant of Grantor contained herein, (ii) any act or omission of Grantor, its agents, guests, licensees, and/or invitees, provided that any such claim, damage, loss, or expense is caused in whole or in part by any negligent act or omission of the Grantor, its agents, guests, licensees, and/or invitees. Grantee hereby indemnifies, holds harmless, and agrees to defend Grantor, and, if applicable, Grantor's officers, directors, shareholders, agents, employees, and attorneys, for, from, and against all damages asserted against or incurred by any of them by reason of, or resulting from: (i) the invalidity of, or a breach by Grantee of any representation, warranty, or covenant of Grantee contained herein, (ii) any act or omission of Grantee, its agents, guests, licensees, and/or invitees, provided that any such claim, damage, loss, or expense is caused in whole or in part by any negligent act or omission of the Grantee, its agents, guests, licensees, and/or invitees.

13. <u>Governing Law/Remedies</u>. This Easement, and the rights and obligations of the parties hereto, shall be governed by the law of the State where the Grantor Property is located. Grantor and Grantee shall be entitled to exercise any and all remedies available either at law or in equity, and the prevailing party shall have the right to recover damages and reasonable attorneys' fees and costs in connection with any legal proceeding arising from or based on this Easement, including appeal. If such prevailing party recovers a judgment in any such action, proceeding or appeal, such costs, expenses and attorney's fees and disbursements shall be included in and as a part of such judgment.

14. <u>Insurance</u>. During the Term of the Easement, Grantee shall carry, at no cost to Grantor, adequate comprehensive liability insurance with limits of not less than $1,000,000.00. Grantor hereby agrees that Grantee may satisfy this requirement pursuant to master policies of insurance covering other locations of Grantee. Grantee shall provide evidence of such insurance to Grantor upon request.

15. <u>Condemnation</u>. If all of the Grantor Property (or if less than all, but Grantee reasonably determines that the remaining portion cannot be operated for the intended purposes), shall be acquired by the right of condemnation or eminent domain for any public or quasi public use or purpose, or sold to a condemning authority under threat of condemnation, then the Term of the Easement shall cease and terminate as of the date of title vesting in such proceeding (or sale). In the event of any condemnation, taking, or sale, whether in whole or part, Grantee and Grantor shall each be entitled to receive and retain such separate awards and portions of lump sum awards as may be allocated to their respective interests in any condemnation proceedings, or as may be otherwise agreed. Termination of this Easement shall not affect the right of the parties to such awards.

16. <u>Taxes</u>. During the Term of the Easement, Grantee shall pay all real and personal property taxes directly attributable to the Tower Area. If the Tower Area is separately assessed for tax purposes then, in connection therewith, Grantor shall direct the applicable tax authority to submit the appropriate bill/invoice therefore directly to Grantee at the address identified herein. Beginning on the date the Tower Area is separately assessed for tax purposes, and continuing thereafter during the Term of the Easement, Grantee shall be responsible for all real and personal property taxes attributable to the Tower Area upon receipt of the appropriate bill/invoice. Alternatively, if the Tower Area is not separately assessed by the taxing authority, then the Grantee agrees to reimburse Grantor, within thirty (30) days of its receipt of a tax bill or

assessment and proof of payment, for the portion on Grantor's tax bill or assessment directly attributable to Grantee's use of the Tower Area. Should the Tower Area's valuation not be expressly identified in the tax assessment, then a separate allocation should be made to determine the value attributable to the Tower Area. This allocation should be based on the relationship of the assessed value attributed to the improvements and land within the Tower Area as a percentage of the overall assessed real estate valuation. Should the assessment include improvements outside of the Tower Area, such improvements should be excluded from Grantee's portion of the tax liability.

17. <u>Assignment of Ground Lease</u>. Grantor and Grantee hereby recognize and agree that there is a certain Ground Lease between Grantor and SprintCom, Inc., dated May 14, 1998. Grantor represents and warrants that (i) there are no existing defaults, events of default or events, occurrences, or acts that, with the giving of notice or lapse of time or both, would constitute a default by either Grantor or Lessee under the Ground Lease; and (ii) the monthly rent and all other sums due under the Ground Lease are fully paid and current. The parties hereto have executed an Assignment of Ground Lease contemporaneously with the execution of this Easement.

18. <u>Other Utility Easement</u>. To the extent that any public utility benefits the Tower Area and Access and Utility Area without valid easement, Grantor also grants and conveys unto Grantee, its tenants, licensees, successors, assigns, assignees, and sublessees, full, complete, uninterrupted and unconditional access to and from the Grantor Property, seven days a week, 24 hours a day, over and across the common areas of any other adjacent property now or hereafter owned by Grantor, for, without limitation, ingress and egress to and from the Grantor Property, as well as the installation, location, and maintenance of overhead and/or underground utility connections, including electric, telephone, gas, water, sewer, and any other utility connection. Grantee's use of such utility easements shall not interfere with Grantor's normal use and enjoyment of the Grantor Property. The rights conferred pursuant to this paragraph may be partially assigned by Grantee to any private or public utility authority to provide utilities to the Grantor Property, or to otherwise further effect this provision.

19. <u>Binding Effect</u>. This Easement shall be binding on and inure to the benefit of the parties hereto and their respective lessees, successors and assigns. It is the intention of the parties hereto that all of the various rights, obligations, and easements created in this Easement shall run with the affected lands and shall inure to the benefit of and be binding upon all future owners and lessees of the affected lands and all persons claiming under them. .

20. <u>Modification</u>. This Easement may not be amended or modified except by a written instrument signed by each of the parties hereto.

21. <u>Non-Waiver</u>. The failure of either party to insist upon compliance by the other party with any obligation, or exercise of any remedy, does not waive the right to do so in the event of a continuing or subsequent delinquency or default. A party's waiver of one or more defaults hereunder does not constitute a waiver of any other delinquency or default.

22. <u>Non-Homestead</u>. Grantor hereby warrants and covenants that the Grantor does not reside on or within the Tower Area and Access and Utility Areas, nor on any property contiguous therewith.

23. <u>Counterparts.</u> This Easement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

24. Recording. This Easement shall be recorded upon the request of the Grantor or Grantee.

IN WITNESS WHEREOF, Grantor and Grantee have executed this Easement on the date first written above.

**GRANTOR:**
**Michael J. Gurgone joined by his
wife Sherri Gurgone**

_(signature)_
Print Name: Christian C. Spross

_(signature)_
Print Name: Christian C. Spross

_(signature)_
Michael J. Gurgone

_(signature)_
Sherri Gurgone

STATE OF Illinois
COUNTY OF Will

Personally appeared before me, the undersigned authority in and for the said county and state, on this 31st day of May , 2006, within in my jurisdiction, the within named Michael J. Gurgone joined by his wife Sherri Gurgone who acknowledged that they executed the above and foregoing instrument. They are personally known to me or have produced Driver's License (type of identification) as identification.

NOTARIAL SEAL

_(signature)_
Name: Rebecca L. Bright
Notary – State of Illinois
My Commission Expires: 10/21/07

"OFFICIAL SEAL"
Rebecca L Bright
Notary Public, State of Illinois
My Commission Expires Oct. 21, 2007

Witnesses:

**GRANTEE:**

**Global Signal Acquisitions IV LLC,**
a Delaware limited liability company

Print Name: John Hosford

By: _____
Name: _____
As its Yakin Madhoo
Assistant Treasurer

Print Name: Yvette Cooley

STATE OF FLORIDA
COUNTY OF SARASOTA

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, on this _____ day of ___May___, 2006, within my jurisdiction, the within named Yakin Madhoo who acknowledged that he/she is Assistant Treasurer of Global Signal Acquisitions IV LLC, a Delaware limited liability company, and as its act and deed he/she executed the above and foregoing instrument, after first having been duly authorized by said company so to do. He/She is personally known to me or has produced _____ (type of identification) as identification.

NOTARIAL SEAL

Name: Melissa Ann Venezia
Notary – State of Florida
My Commission Expires: 10-07-06

MELISSA ANN VENEZIA
Commission # DD155673
Expires Oct. 7, 2006
Bonded Through Advantage Notary

9

## EXHIBIT A

### GRANTOR PROPERTY

That part of the West 201.10 feet of the East 793.80 feet of the South 633.95 feet of the East half of the Southeast Quarter of Section 8, lying South of the Southeasterly right of way of Federal Aid Interstate 80, according to the instrument recorded January 7, 1965, as Document No. 1025970, also the West 296.06 feet of the East 592.70 feet of the North 46.00 feet of the South 633.95 feet of the East half of the Southeast quarter of Section 8, Township 35 North, Range 11, East of the Third Principal Meridian, in Will County, Illinois.

# EXHIBIT B

## TOWER AREA

COMMENCING AT THE NORTHWEST CORNER OF LOT 1 IN CAROL ESTATES, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 276.06; THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS WEST, 11 FEET; THENCE NORTH 46 DEGREES 39 MINUTES 20 SECONDS WEST, 21 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES, 36 SECONDS WEST, 313 FEET; THENCE SOUTH 43 DEGREES 02 MINUTES 36 SECONDS WEST, 49 FEET; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS WEST, 24 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS EAST, 33 FEET; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 22.7 FEET; THENCE NORTH 01 DEGREES 48 MINUTES 12 SECONDS WEST, 33 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES 36 SECONDS WEST, 22.7 FEET TO SAID POINT OF BEGINNING.

08-08-400-037

# EXHIBIT C

## ACCESS AND UTILITY AREAS

COMMENCING AT THE NORTHWESTT CORNER OF LOT 1 IN CAROL ESTATES, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 8, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 276.06 FEET TO THE POINT OF BEGINNING; THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS WEST, 11 FEET; THENCE NORTH 46 DEGREES 39 MINUTES 20 SECONDS WEST, 21 FEET; THENCE SOUTH 88 DEGREES 02 MINUTES, 36 SECONDS WEST, 313 FEET; THENCE SOUTH 43 DEGREES 02 MINUTES 36 SECONDS WEST, 49 FEET; THENCE SOUTH 01 DEGREES 57 MINUTES 24 SECONDS WEST, 57 FEET; THENCE SOUTH 88 DEGREES 11 MINUTES 48 SECONDS WEST, 20 FEET; THENCE NORTH 01 DEGREES 57 MINUTES 24 SECONDS EAST, 66 FEET; THENCE NORTH 88 DEGREES 02 MINUTES 36 SECONDS EAST, 330 FEET; THENCE SOUTH 46 DEGREES 39 MINUTES 20 SECONDS EAST, 38 FEET; THENCE SOUTH 01 DEGREES 39 MINUTES 20 EAST, 19 FEET TO THE NORTH RIGHT OF WAY LINE OF BJORK DRIVE; THENCE SOUTH 88 DEGREES 02 MINUTES 36 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE, 20 FEET TO SAID POINT OF BEGINNING.



County Tax Not Collected
$66.50

132,850.00 STATE & COUNTY TAX

STATE OF ILLINOIS

JUN. 14. 06

WILL COUNTY

# 000001143B

| REAL ESTATE TRANSFER TAX |
| --- |
| 0019950 |
| FP 103040 |

# EXHIBIT 5


2017.08.04 09:15



2017.08.04 09:15



# EXHIBIT 6

UTILITY EASEMENT LEGAL DESCRIPTION

THAT PART OF THE EAST 793.80 FEET OF THE SOUTH 633.95 FEET OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 8, LYING SOUTH OF THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF FEDERAL AID INTERSTATE ROUTE 80, ACCORDING TO THE INSTRUMENT RECORDED JANUARY 7, 1965 AS DOCUMENT NO. 1025970, IN SECTION 8, TOWNSHIP 35 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT A POINT ON THE NORTH LINE OF THE SOUTH 587.95 FEET OF THE SAID EAST HALF OF THE SOUTHEAST QUARTER, SAID LINE ALSO BEING THE NORTH LINE OF CAROL ESTATES ACCORDING TO THE PLAT THEREOF RECORDED FEBRUARY 26, 1973 AS DOCUMENT NO. R73-5212, AT A POINT 296.06 FEET EAST OF THE NORTHWEST CORNER OF THE SAID CAROL ESTATES; THENCE SOUTH 88 DEGREES 02 MINUTES 38 SECONDS WEST 296.06 FEET, ALONG THE SAID NORTH LINE OF CAROL ESTATES, TO THE NORTHWEST CORNER OF SAID CAROL ESTATES; THENCE SOUTH 01 DEGREES 39 MINUTES 20 SECONDS EAST 133.06 FEET, ALONG THE WEST LINE OF THE SAID CAROL ESTATES, TO THE POINT OF BEGINNING; THENCE NORTH 42 DEGREES 20 MINUTES 31 SECONDS WEST 96.37 FEET; THENCE SOUTH 01 DEGREES 39 MINUTES 20 SECONDS EAST 7.67 FEET; THENCE SOUTH 88 DEGREES 20 MINUTES 40 SECONDS WEST 6.59 FEET; THENCE SOUTH 42 DEGREES 20 MINUTES 31 SECONDS EAST 105.46 FEET, TO THE SAID WEST LINE OF CAROL ESTATES; THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS WEST 15.34 FEET, ALONG THE SAID WEST LINE OF CAROL ESTATES, TO THE POINT OF BEGINNING, IN WILL COUNTY, ILLINOIS, CONTAINING 0.014 ACRES MORE OR LESS.